IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **CYNTHIA FERGUSON,** | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) **01-C-0812-W** |
| **CITY OF TUSCALOOSA,** | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

Before this Court is Defendant's Motion for Summary Judgment. Based on the undisputed facts, and for the reasons set forth in this Opinion, the Court concludes that Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

## I. FACTS

1. Plaintiff Cynthia Ferguson was employed by Defendant City of Tuscaloosa ("the City") [When?]. She served in the City's Water and Sewer Department Division as an inventory supply clerk until July 3, 1998.

2. The inventory supply clerk position involves the lifting of heavy materials, many of which weigh in excess of 20 pounds. In inventory supply clerk must lift these heavy supplies a few times per week. The inventory supply clerk also performs housekeeping duties associated with the shop areas.

3. In late March 1998, Plaintiff notified her coworkers and her supervisor that she was pregnant.



4. On April 3, 1998, Plaintiff was instructed by her supervisor to paint shelves in her work area. Shortly after beginning to paint, Plaintiff became ill from the paint fumes and had to leave work for the remainder of the day.

5. When Plaintiff returned to work on April 6, 1998, she was instructed to obtain a statement from her physician concerning the illness she had suffered on April 3rd. Defendant further requested that Plaintiff produce a list of all additional restrictions placed on her by her obstetrician.

6. On April 9, 1998, Plaintiff submitted to Defendant a list of restrictions. The statement contained a hand-written notation by Plaintiff's doctor that he "also recommend[ed] no heavy lifting (not greater than 20 lbs) on a repetitive basis."

7. Defendant's "Light Duty Policy" provides as follows:

> The City of Tuscaloosa does not recognize any category of 'light duty.' If an employee who has been injured or ill returns to work, he or she is expected to fully perform his or her duties. Should a supervisor reasonably suspect that an employee who has been injured or ill cannot perform his or her duties then [the supervisor] may order the employee to provide medical certification to the effect that he or she can fully perform all employment duties.

8. The Human Resources Department of the City consulted with its "ADA Task Force," which recommended that Plaintiff be independently examined by an Occupational Medicine Specialist more familiar with Plaintiff's job requirements, in order to confirm the existence and seriousness of her condition and its effect on her ability to perform her job. Plaintiff concedes that this request was "reasonable and legitimate."

9. Plaintiff was examined by Dr. [first name] Casten. Following his examination of Plaintiff, Dr. Casten issued his medical report to the City. That report essentially concurred

2

with the earlier report of Plaintiff's obstetrician.

9. At the behest of Defendant, independent expert Jerry Woods made an on-site inspection and analysis of Plaintiff's job functions, and reviewed the report of Dr. Casten. Woods concluded that because of the lifting restriction, Plaintiff was unable to perform all the essential functions of her job.

10. Director of the Water and Sewage Department Maurice Sledge reviewed the various reports and concluded that Plaintiff was unable to perform all the essential functions of her job.

11. In May 1998, Defendant informed Plaintiff that it had no jobs available for which she could perform all of the essential functions. Defendant suggested to the Plaintiff that she could take leave under the Family and Medical Leave Act ("FMLA") until she was able to fully perform all of the essential her job.

12. Plaintiff refused to take FMLA leave and informed the Defendant of her intention to continue working. She maintained that she could perform the essential functions of her job.

13. In June, Defendant informed Plaintiff that her employment would be terminated effective July 3, 1998, because she could not perform the essential functions of her job. The Defendant again offered her the opportunity to take FMLA leave in lieu of termination.

14. Plaintiff did not apply for FMLA leave. Defendant terminated her employment on July 3, 1998.

15. Plaintiff thereafter brought this action, alleging that Defendant's actions violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of

1978.[1]  She also makes a claim of retaliatory discharge.

## II. APPLICABLE LAW

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.

"[T]he summary judgment rule applies in job discrimination cases just as in other cases." *Chapman v. AL Transport,* 229 F.3d 1012, 1026 (11th Cir. 2000).  This decision eschewed the better view that summary judgment is improper where issues of intent and motivation are determinative. employment discrimination claims which often turn on an employer's motivation and intent. Nonetheless, the Court is bound by *Chapman.*

The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. §2000e(k).  The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13, (11th Cir. 1994).  A plaintiff bringing a case on disparate treatment grounds under the PDA must establish that the employer intended to discriminate against the protected class. Id. at 1313.

---

[1] The Pregnancy Discrimination Act provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. §2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." See 42 U.S.C. §2000e(k), *Armindo v. Padlocker, Inc.,* 209 F.3d 1319, 1320 (11th Cir. 2000).

A *prima facie* case under the PDA is established by using the framework articulated in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must prove that (1) she was a member of a protected class; (2) she was qualified for the position at issue; (3) an adverse employment action was taken against her; and (4) she suffered from differential application of work or disciplinary rules. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d at 1314. Once plaintiff establishes her *prima facie* case, the defendant is required to articulate one or more legitimate, non-discriminatory reasons for the adverse employment action. Once such reason is articulated, plaintiff then has the burden of showing that the nondiscriminatory reason offered by the defendant is pretext. *Id., Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320-21 (11th Cir. 2000).

A *prima facie* case for retaliation is established by showing that (1) the employee engaged in protected activity, (2) with awareness of the protected activity, the employer took an adverse employment action against the employee; and (3) a casual connection between the protected activity and the adverse employment action. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999.) Once the *prima facie* case is established, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). The plaintiff must then show that the articulated reason is a pretext for retaliation. *Id.*

### III. ANALYSIS

*A. Disparate Treatment Claim*

Plaintiff is a member of a protected class and she was terminated. However, Plaintiff has failed to prove that she was qualified to handle the functions of the inventory supply clerk position or that the Defendant treated employees outside of the protected class more favorably.

Plaintiff's job required her to lift supplies which weighed more than 20 pounds on a regular basis. Due to her pregnancy, the plaintiff's doctor imposed a restriction which prevented her from lifting items more than 20 pounds. As a result, Plaintiff was not capable of performing the essential functions of her job and therefore, was not qualified to perform the duties of the inventory supply clerk position.

The Court is not persuaded by Plaintiff's argument that lifting heavy items was only required a few times per week which only amounts to being required on an occasional basis. In the Court's view, lifting such items a few times per week qualifies it as an essential job function and constitutes the kind of regular basis which her physician intended to preclude.

Further, Plaintiff has not proven that different rules were applied to non-pregnant employees. The PDA does not require an employer to treat a pregnant employee who cannot perform her job functions due to her pregnancy more favorably than a non-pregnant employee who cannot perform her job functions for any other medical condition. *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1321 (11th Cir. 2000). Plaintiff has offered no evidence to suggest that any other employees who could not perform their job functions were treated more favorably than the plaintiff.

Therefore, Plaintiff has failed to prove her *prima facie* case.

Even assuming that Plaintiff could establish her *prima facie* case, she has not provided any evidence to rebut the defendant's legitimate, nondiscriminatory reason for her termination. Defendant maintains that Plaintiff was terminated because she was not capable of performing her job functions. Plaintiff has not provided any evidence to establish that this nondiscriminatory reason is pretextual. As a result, summary judgment would still be appropriate in this case.

*B. Retaliation Claim*

Plaintiff has failed to prove a *prima facie* case of retaliation.

Plaintiff maintains that she was fired for refusing to take FMLA leave. The defendant's offer of FMLA leave and the plaintiff's refusal of the offer is not a protected activity under Title VII. Thus, Plaintiff cannot meet the threshold requirement of showing that she engaged in protected activity.

Even if Plaintiff could prove a *prima facie* case for retaliation, there is simply no evidence that the articulated reason for her discharge is pretextual. Her own doctor said in effect that she could not perform one of the essential functions of her job. The defendant was entitled to rely on her physician's assessment

## CONCLUSION

Defendant's Motion for Summary Judgment will be granted by separate order.

Done this 18th day of September 2002.

_____
Chief United States District Judge
U.W. Clemon